The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JAMES H. WARD,

          Plaintiff,

    vs.

BANK OF AMERICA, a national association,

          Defendant.

NO. 2:19-cv-00185-RBL

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:

April 5, 2019

## I.    **INTRODUCTION**

Defendant Bank of America, N.A. ("BANA") has subjected Plaintiff James Ward to half a decade of improper collection actions, including serial foreclosures and contradictory demands for excessive deficiency judgments, all arising out of a default from nearly 10 years ago. As of today's date, James Ward has not only lost his modest home in Port Townsend, but is still being pursued by BANA for over a half-million dollars of late fees, costs, and interest accruing by BANA's intransigence and inability to conduct a proper foreclosure. After Mr. Ward brought this case seeking redress for BANA's years of abusive collection efforts and foreclosure gamesmanship, BANA now asks this Court to dismiss Mr. Ward's Complaint, asserting that Mr. Ward simply has no cause of action for BANA's years of misconduct. BANA's motion should be denied.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

BANA began servicing Plaintiff James Ward's home in 2011, over a year after the alleged default in 2010. (The loan was originated between Mr. Ward and Countrywide Bank in 2007; BANA was not a party to the loan.) In 2014, BANA sued Mr. Ward for judicial foreclosure in Jefferson County Superior Court, and – with the case still pending, in violation of Washington law – simultaneously purportedly sold Mr. Ward's home via nonjudicial trustee's sale in 2017. Several months later, BANA returned to the Jefferson County court and asked for leave to amend its complaint to unwind the trustee's sale. Confusingly, BANA did not name the purported buyer, Fannie Mae, as a party to the action, thus making its request (rescission of the sale) procedurally impossible to grant.

In the meantime, BANA continued to subject Mr. Ward to its improper collection efforts. BANA sought a deficiency judgment against Mr. Ward, but in the same document, claimed it was not seeking a deficiency judgment. BANA sought to unwind its own improper sale, but also did not join the necessary party. BANA claimed it was the servicer of the loan, but when it was convenient, BANA alternatively claimed that it was the owner of the loan. *BANA even seeks to hold Mr. Ward responsible for thousands of dollars in fees related to BANA's own errors in the admittedly-improper trustee's sale*. Dkt. #1-1 at 73. As of today's date, there still remains no end in sight for BANA's renewed judicial foreclosure lawsuit. As Mr. Ward's property has been taken from him years ago, the only plausible conclusion is that BANA is attempting to maximize its fees, interest, and costs to obtain a massive deficiency judgment against Mr. Ward – all for a decade-old default.

In short, BANA is asserting that it can mess up the foreclosure process altogether, sell Mr. Ward's home, and come back to court for help redoing the foreclosure, without any consequences or repercussions – and all on Mr. Ward's tab. James Ward respectfully disagrees, and has properly

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 2
2:19-CV-00185-RBL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

asserted claims for Negligence, Negligent Misrepresentation, Per Se Violations of Washington Consumer Protection Act, violation of the Washington Consumer Protection Act, violation of the Fair Debt Collection Practices Act, and Abuse of Process. On the standards of a Rule 12(b)(6) motion, where Mr. Ward's allegations must be taken as true, BANA's motion to dismiss must be denied.

## II.     <u>LAW AND ARGUMENT</u>

### A.   <u>Fed. R. Civ. P. 12(b)(6) Motions to Dismiss</u>

Historically, Federal Rule of Civil Procedure 12(b)(6) motions to dismiss for failure to state a claim are "viewed with disfavor" and are "rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. This issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974). On this backdrop, the *Iqbal/Twombly* decisions provide additional clarification but do not impose any heightened pleading standards. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Iqbal*, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity"). After accepting as true plaintiff's allegations and drawing all reasonable inferences in its favor, a court must then determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *see also Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008) (court must also draw all reasonable inferences in favor of the plaintiff).

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 3
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

### 1. *__Plausible Complaints Survive Rule 12(b)(6) Motions to Dismiss__*

The Ninth Circuit has explained the "plausibility" requirement as follows:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6) … The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'

*Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (citing *Iqbal*, 129 S. Ct. at 1951). Stated more succinctly, "*Iqbal* demands more of plaintiffs than bare notice pleading, *but it does not require us to flyspeck complaints looking for any gap in the facts.*"  *Lacey v. Maricopa County (Arpaio)*, 693 F.3d 896, 924 (9th Cir. 2012) (en banc) (citations omitted) (emphasis added).

### 2. *__Notice Pleading Standards Apply__*

The Ninth Circuit has held that *Iqbal*, *Twombly*, and their progeny did little to alter federal pleading standards beyond notice pleading, as insufficient complaints would be dismissed under either the current or former standards.  *See al-Kidd v. Ashcroft*, 580 F.3d 949, 963 (2009), *rev'd on other grounds by Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011) ("Even before the Supreme Court's decision[s] in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal*, it was likely that conclusory allegations of motive, without more, would not have been enough to survive a motion to dismiss").

It remains the case that a complaint requires a "short and plain statement of the claim showing the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 127 S. Ct. at 1964).  A plaintiff's allegations need "only enough facts to state a claim for relief that is plausible on its face."  *Twombly*, 556 U.S. at 570.  "[W]e do not require heightened fact pleading of

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 4
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    specifics..." *Id*.[1]

2    **B.  Plaintiff Plausibly Pleaded A Claim For Negligence**

3           *1.  BANA incorrectly asserts it was in a lender-borrower relationship with Plaintiff*

4           BANA fundamentally misapprehends the facts and allegations in this case, claiming

5    (incorrectly) that it had a lender-borrower relationship with Plaintiff James Ward, and (incorrectly)

6    extrapolating that no negligence-based claims can arise from that relationship.  Mot. at 5-6.

7           To be clear, Plaintiff has alleged that he borrowed money from Countrywide Bank

8    (Complaint (dkt# 1) at ¶ 7), and that BANA's involvement was limited to that of a default servicer

9    (*id*. at ¶ 8).  The documents attached to the Complaint also support this position, such as the Deed

10   of Trust showing Countrywide Bank as the "Lender" (dkt# 1-1 at 5), and the Notice of Default

11   specifically identifying "Bank of America, N.A." as the "Loan Servicer" (dkt# 1-1 at 59).  In short,

12   there is no allegation that Plaintiff James Ward ever had a contractual relationship with BANA.

13          For purposes of a Rule 12(b)(6) motion, Plaintiff's allegations are taken as true.  While

14   BANA has variously claimed that (in addition to being the default servicer) it ultimately obtained

15   or acquired Plaintiff's loan, these assertions are immaterial to the issue of whether Plaintiff has

16   stated a plausible claim for relief.

17          *2.  Plaintiff alleged that BANA owed him a duty, breached that duty, and caused
            damages*

18

19          The elements of negligence are duty, breach, proximate cause, and damages.  *Mathis v.*

20   *Ammons*, 84 Wn. App. 411, 415-16 (1996), *review denied*, 132 Wn.2d 1008 (1997).  "Duty" is the

---

21   [1] The post-*Twombly* decision in *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) is instructive.  Within weeks
     after deciding *Twombly*, the Court reversed a Tenth Circuit decision for requiring fact pleading.  In
22   Erickson, the Court held that a prisoner's § 1983 complaint, alleging simply that his hepatitis C treatment
     was terminated and thus his life was endangered without further treatment, gave prison officials fair notice
23   of his claim.  The Court held that it was error for the court of appeals to declare these allegations too
     conclusory to establish – for pleading purposes – that the prisoner had suffered "a cognizable independent
     harm" as a result of his removal from the hepatitis C treatment program.  *Id*.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 5
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

duty to exercise ordinary care, while "breach" is a failure to exercise ordinary care. *Id*. at 416.

The Complaint alleges that BANA, as a default servicer, breached its duty of ordinary care by manipulating the foreclosure process to drive up the value of a deficiency judgment against Mr. Ward and impose the maximum possible damages. Complaint at ¶¶ 17-18. This breach of duty caused Mr. Ward damages, and subjects him to likely future damages, including (but not limited to) the cost of defending five years' worth of litigation due to BANA's wrongful foreclosure practices, an increasingly large deficiency judgment, and the prospect of ongoing damaged credit (as any such foreclosure should have been completed long ago, thus the delay continues to "re-age" the foreclosure with respect to Mr. Ward's credit reports). *Id*. at ¶¶ 18, 19, 36, 41.

BANA's duty to exercise ordinary care is further informed by RCW 61.24.030(4), which provides that it may not initiate a nonjudicial foreclosure while a judicial foreclosure is pending. BANA's failure to observe this statute may be further considered as evidence of negligence. RCW 5.40.050.

### 3. *Even if there were a lender-borrower relationship between the parties, courts still recognize the existence of duties of care*

As stated above, there is no contractual relationship between Plaintiff and BANA. Even if there were, however, Plaintiff may still maintain a negligence claim.

BANA primarily argues that no fiduciary relationship exists (Mot. at 5-6), which is irrelevant here, as Plaintiff made no such allegations. BANA cites *Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1119 (W.D. Wash. 2012) for the prospect that "no duty" exists between lender and borrower, but that case specifically involved a breach of fiduciary claim – a claim not raised by Plaintiff in this case.

Numerous cases recognize a duty of care based on the lack of bargaining power on the part of the borrower, and, "coupled with conflicts of interest that exist in the modern loan servicing

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 6
2:19-CV-00185-RBL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

industry" this provides "a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers..." *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098, *3 (N.D. Cal. May 10, 2010) (adding the policy of preventing future harm, which "strongly favor[ed] imposing a duty of care on [lenders]."); *Johnson v. PNC Mortgage*, 80 F. Supp. 3d 980, 982 (N.D. Cal. 2015) (borrowers successfully stated negligence claim against servicer who offered them an opportunity to modify their loan as the servicer had a duty under California Homeowner Bills of Rights to handle modification requests with reasonable care, and the borrowers alleged that the servicer miscalculated their income); *Montgomery v. CitiMortgage, Inc.,* 955 F. Supp. 2d 640 (S.D. Miss. 2013) (holding a loan servicer owed mortgagors a legal duty of care); *McIntosh v. IndyMac Bank, FSB*, 2013 WL 135315, at *2 (D. Ariz. Jan. 10, 2013) ("A lender's duty of care includes the duty to correctly service a borrower's account and to disclose correct information."); *Kemp v. Wells Fargo Bank*, 2017 WL 4805567 (N.D. Cal., Oct. 25, 2017) (Holding that bank owed plaintiff a duty of care in processing her loan modification and breached that duty by providing confusing and misleading information, but dismissed plaintiff's negligence claim for failure to allege facts that bank caused her injuries). Most recently, Judge Coughenour issued the opinion in *Collins v. Seterus*, 2019 WL 1254878 at *5 (W.D. Wash. Mar. 19, 2019), where the plaintiff sued the servicer for failure to ensure accurate loan information during transfer of servicing rights and onboarding new loans, the Court found that the plaintiff plausibly pleaded negligence and negligent misrepresentation claims as these arise from tort duties independent of any contractual relationship between the parties.

James Ward alleges a myriad of facts supporting the elements of the tort of a duty of care owed by BANA. He states that as a default servicer, BANA is an expert in foreclosure of real property as collateral, and has total control and power over the foreclosure process. Complaint at

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 7
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

¶¶ 17, 18.  Here, BANA decided when to initiate foreclosure and by which method of foreclosure. In this case, BANA knew that the method chosen would affect the Plaintiff differently; nonjudicial foreclosure extinguishes the debt in its entirety and judicial foreclosure may subject Plaintiff to a substantial deficiency based on the length of the default.  *See generally*, Complaint.  BANA chose to sue Plaintiff in state court in 2014 and was able to overcome Plaintiff's *pro se* resistance but did not finish up the lawsuit.  Rather, while the judicial foreclosure was pending, BANA sold Mr. Ward's home through nonjudicial foreclosure in 2017 to Fannie Mae.  *Id*. at ¶¶ 10-11.  Roughly four years after BANA started the lawsuit, and eight years after the original default, BANA went back to the state court, seeking to undo the trustee's sale and to resume the lawsuit.  BANA wants to not just take the property (which was already sold to Fannie Mae) but to obtain a huge deficiency against James Ward.  Logically speaking, BANA owes a duty of care to borrowers to comply with the laws governing foreclosure.  There is a foreseeable risk that BANA's breach of this duty will harm borrowers.  There is also a risk that BANA's breach has occurred or will occur in the future. Given the fact that BANA plainly admits that it violated RCW 61.24.030(4), Plaintiff has plausibly pleaded a duty of care and BANA's unjustifiable breach of that duty.

### 4.  *The independent duty doctrine does not apply*

BANA's final argument is that the independent duty doctrine limits parties to their contractual remedies.  Mot. at 6.  This doctrine, however, does not apply where (1) there is no contract between the parties, nor (2) where a contract applies but a tort duty arises separately from the terms of the contract.

The independent duty doctrine, formerly known as the economic loss rule, operates "to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull,* 159 Wn.2d 674, 681 (2007); *Affiliated FM Ins. Co. v. LTK Consulting*

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

*Servs., Inc.*, 170 Wn.2d 442 (2010). However, the "rule **does not bar recovery in tort when the defendant's alleged misconduct implicates a tort duty that arises independently of the terms of the contract**." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 393 (2010) (emphasis added). "An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Id*. at 402. "To date, we have applied the doctrine to a narrow class of cases, primarily limiting its application to claims arising out of construction on real property and real property sales." *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 165 (2012). "We have done so in each case based upon policy considerations unique to those industries. We have never applied the doctrine as a rule of general application outside of these limited circumstances." *Eastwood*, 170 Wn.2d at 416 (Chambers, J., concurring).

As Judge Coughenour has observed, the Washington Supreme Court "took great pains to limit" the doctrine and to "clarify that it does not bar tort remedies except in fairly unusual circumstances." *Reading Hosp. v. Anglepoint Grp., Inc.*, 2015 WL 13145347 at *3 (W.D. Wash. May 26, 2015).

First, BANA cannot identify a contractual relationship between BANA and the Plaintiff that would allow Mr. Ward to recover damages based on breach of a specific contract. BANA's actions were taken as a default servicer. BANA is not a party to the Deed of Trust or the Note. In *Collins v. Seterus*, Judge Coughenour denied the motion to dismiss, as it was not possible to determine the scope of the defendant's duties from the pleadings, where the Complaint alleged the lack of a contractual relationship. 2019 WL 1254878.

Second, even if BANA were a party to a contract with Mr. Ward, the allegations in this case are that BANA owed duties (and breached duties) **separate and apart from any contractual duties owed**. BANA's conduct at issue here – initiating serial foreclosure litigation, improperly

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 9
2:19-CV-00185-RBL

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1  selling Mr. Ward's house in contravention of state law, attempting to unilaterally unwind the
2  improper sale to obtain an inflated deficiency judgment – is conduct which is not contemplated by
3  the terms of any contract.

4  ### C. Plaintiff Plausibly Pleaded Causation In Support Of Negligent Misrepresentation

5  BANA claims that James Ward "fails to show how he reasonably relied on any
6  misrepresentation made by BANA or how any reasonable reliance caused him to suffer
7  compensable damages." Mot. at 8. BANA does not appear to make any argument against the
8  negligent misrepresentation claim beyond lack of causation.

9  Plaintiff James Ward has pleaded that his house was sold and title was vested in Fannie
10  Mae's name as the purchaser. Complaint at ¶¶ 10-11. Mr. Ward obviously relied on the assertions
11  made by BANA (including by not limited to the publication regarding nonjudicial foreclosure and
12  the recording of the Trustee's Deed, all of which BANA directly asserted or caused to be asserted),
13  which meant that Mr. Ward would be free from a deficiency judgment as a result of the nonjudicial
14  sale. *See generally* Complaint.

15  However, if the trustee's sale was in fact **invalid** – as BANA has asserted in asking for said
16  trustee's sale to be set aside – then Plaintiff had lost his Property to the wrongful foreclosure, and
17  such loss is to be measured by the fair market value as of the date of loss. Further, Plaintiff alleges
18  that he is being demanded by BANA to pay a large money judgment. Complaint at ¶¶ 15, 24.
19  Plaintiff has asserted that due to the length of time BANA has taken to complete its foreclosure of
20  his home, he has suffered prolonged "credit damage, and anguish and pain resulting from serial
21  foreclosures and lack of finality." *Id.* at ¶ 19. He has also alleged loss of possession or loss of use
22  since the time the trustee's deed was issued, February 17, 2017; this is a measurable pecuniary
23  loss. Plaintiff has pleaded that he has been subjected to "severe emotional distress as well as

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

certain physical manifestation of such severe emotional distress, including anxiety, confusion and depression as a result of BANA's treatment of him and his Property." *Id*. at ¶ 25. None of Plaintiff's described damages were caused by any other intervening event or entity; all are directly traceable to BANA's negligent misrepresentations about the status of the foreclosure of Plaintiff's home.

**D. Plaintiff (A) Has Pleaded a *per se* Violation Via Defendant's Violation of the FDCPA, and (B) Identified RCW 61.24.030(4) As The Statute Violated By BANA Which Constitutes a *per se* Violation Of The CPA**

**1. *Plaintiff has pleaded that a violation of the FDCPA constitutes a violation of the CPA***

As Judge Coughenour recently stated: "'When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA ... under state and federal law, reflecting the public policy significance of the industry.' **A violation of the FDCPA may serve as a basis for a per se violation of the CPA.**" *Collins v. Seterus*, 2019 WL 1254878 at *7 (W.D. Wash. Mar. 19, 2019) (quoting *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009)) (emphasis added). As stated below, Plaintiff has pleaded a violation of the FDCPA, which may serve as the basis for a *per se* CPA violation. On this basis alone, Defendant's motion should be denied.

**2. *Plaintiff has pleaded a per se violation of the CPA***

A plaintiff claiming a per se violation of the CPA must show (1) the existence of a pertinent statute; (2) violation of that statute; (3) the violation was the proximate cause of damages sustained; and (4) they were within the class of people the statute sought to protect. *Fid. Mortgage Corp. v. Seattle Times Co.*, 131 Wn. App. 462, 471 (2005) (quoting *Keyes v. Bollinger*, 31 Wn. App. 286, 289 (1982)); *Opportunity Mgmt. Co., Inc. v. Frost*, 94 Wn. App. 1001 (1999).

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 11
2:19-CV-00185-RBL

ANDERSON|SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

James Ward positively identified the pertinent statute that BANA admitted to have violated, RCW 61.24.030(4), which prohibits the simultaneous foreclosure using both judicial and nonjudicial means. Complaint at ¶¶ 28-30. Violation of RCW 61.24.030(4) is an irregularity or defect occurring within the foreclosure process and BANA has admitted as much in its effort to set aside the trustee's sale. A private cause of action for damages resulting from irregularities or defects during nonjudicial foreclosure can be brought under the CPA. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 119 (2012) (a plaintiff may bring a claim under the CPA arguing the facts specific to the case); *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn. App. 294, 320 (2013) (actions taken during the nonjudicial foreclosure process were sufficient to support all five elements of a CPA claim and survive pretrial dismissal); *Vawter v. Quality Loan Serv. Corp. of Wash.,* 707 F. Supp. 2d 1115, 1129-30 (W.D. Wash. 2010) (court discussed the five elements for a CPA claim and considered the factual allegations supporting plaintiff's DTA claim to support the CPA claim as well); *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771 (2013) (although property was sold, the court discussed action amounting to CPA claims in depth, focusing on the acts of defendants, not the fact the property was sold); *Lyons v. U.S. Bank Nat'l Ass'n,* 181 Wn.2d 775 (2014) (Under appropriate factual circumstances, violations of the DTA are actionable under the CPA, even if no foreclosure sale has been completed); *Frias v. Asset Foreclosure Serv. Inc.,* 181 Wn.2d 412 (2014) (same).

BANA's assertion that Plaintiff's damages stem from Plaintiff's own uncontested default is wholly illogical. Because Plaintiff did not contest, BANA should have been able to foreclose on the Property swiftly and certainly. Yet, there have been eight long years that passed between the Loan's default and BANA's current, serial and ongoing foreclosure of the same property. BANA's *per se* violation of RCW 61.24.030(4) proximately caused the damages described in

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 12
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1  Plaintiff's Complaint including loss of his home due to wrongful foreclosure, credit damages,

2  emotional distress, and money being spent to address against the judicial foreclosure in Jefferson

3  County.

4  James Ward described thoroughly in his Complaint how BANA's violation of this statutory

5  provision caused him harm: (1) if the trustee's sale was defective, he was forced to vacate from

6  his home and lost the benefit of possession since title was transferred to Fannie Mae in 2017; (2)

7  if valid, the trustee's sale of February 2017 would have ended the controversy between him and

8  BANA and provided him finality; (3) the continuing judicial lawsuit and the trustee's sale of 2017,

9  diminish his credit standing; (4) which are continuing since 2014; and (5) costs of dealing with the

10  judicial foreclosure in Jefferson County, and (6) any deficiency judgment that results from that

11  judicial foreclosure.

12  **E. Plaintiff Plausibly Pleaded Violation Of The CPA By BANA**

13  BANA does nothing but recycle the argument that James Ward cannot show damages for

14  BANA's violation of the CPA because the damages would have been caused by the loan default

15  itself anyway. Yet, this argument is not persuasive because it blames the victim for the very

16  victimization perpetrated by BANA. If the trustee's sale of 2017 were valid, James Ward would

17  have finality in giving up possession and moving on with his life with the assurance that he has no

18  further obligations. Yet, based on BANA's admission that the trustee's sale of 2017 might be

19  invalid, James Ward has been deprived possession and title of his Property ever since possession

20  and title were transferred to Fannie Mae via the deficient Trustee's Deed. By seeking to set aside

21  the deficient Trustee's Deed, BANA also demands that Plaintiff pay a huge amount of deficiency

22  which includes all payments, interests, fees, penalties, which have not been paid since 2010,

23  including all payments due between the issuance of the Trustee's Deed until the conclusion of the

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 13
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

pending judicial foreclosure in Jefferson County, as well as fees and costs for the invalid nonjudicial foreclosure. Had BANA proceeded with the judicial foreclosure timely and wrapping it up in 2014, James Ward would be done with his personal obligation and any other liability associated with the Property because title was vested in Fannie Mae. Rather, BANA now claims that he is liable for payments of principal, interest, fees and costs relating to the Loan for the years of 2014, 2015, 2016, 2017, 2018 and beyond. Thus, this item of damages is not speculative, but the guaranteed result of BANA's intentional practice, which is to start foreclosure using nonjudicial foreclosure while an action for judicial foreclosure is pending, selling the property to a third-party, and then coming back claiming irregularities in the sale, asking for a do-over in order to obtain a much greater recovery in payments, fees and costs incurred during all the years that the bank has taken to foreclose.

In any event, under *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784 (1986), a CPA plaintiff must establish five elements: (1) an unfair or deceptive practice, (2) occurring in trade or commerce, (3) which affects the public interest, (4) an injury to the plaintiff's business or property, (5) that the injury was caused by the unfair or deceptive practice.[2] Regardless of whether Bank of America agrees on the merits of these allegations, Plaintiff has pleaded these elements, and dismissal at the pleading stage is not appropriate. *See* Complaint at ¶¶ 32-36.

## F. <u>Plaintiff Has Plausibly Pleaded Claims Under The Fair Debt Collection Practices Act</u>

BANA incorrectly asserts that Plaintiff's FDCPA claim fails because Plaintiff "fails to establish" BANA constitutes a "debt collector." Motion at 9-10. First, at the pleading stage,

---

[2] The CPA addresses "injuries" rather than "damages"; quantifiable monetary loss is not required. *Panag* 166 Wn.2d 58. Simply consulting an attorney is sufficient to show injury. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412 (2014) (*citing Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 62 (2009)).

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 14
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

Plaintiff is not required to "establish" anything. Second, Plaintiff has properly alleged that BANA is a "debt collector" for purposes of the FDCPA.

### 1. *BANA is a "debt collector" pursuant to 15 U.S.C. § 1692a(6)*

BANA claimed to obtain the rights to Plaintiff's debt after it was in default, and then attempted to collect on that debt.

The term "debt collector" includes, among other definitions, any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Although beyond pointing to a few cases indicating that "creditors" and "mortgage assignees" are not "debt collectors," BANA makes no specific argument as to why it does not constitute a "debt collector." Presumably, BANA relies on 15 U.S.C. § 1692a(6)(F), which excludes from the definition of debt collector "any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained."

BANA's own documents tell a different story. According to BANA, James Ward defaulted on May 1, 2010. Complaint at ¶ 8; dkt #1-1 at 21 (BANA's complaint for judicial foreclosure). BANA claims that it obtained its rights in the debt in September 2011, over a year after the default. *Id*. Plaintiff further alleged that BANA took actions to collect the debt after obtaining the loan post-default, and that BANA regularly attempts to collect debts on defaulted loans. Complaint at ¶ 37; *see, e.g.*, *London v. Aurora Loan Servs.*, 2010 WL 3751812, at *4 (N.D.Cal. Sept.24, 2010) ("Here, because Aurora is a loan servicer, it is not a debt collector under the FDCPA **unless it acquired the loan after default**, which would disqualify Aurora for the § 1692a(6)(F)(iii) exemption.") (emphasis added); *see also Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013) ("Because Wells Fargo's and BSI's challenged activities occurred

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 15
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

in the context of a post-default assignment, their actions are not immune from the FDCPA pursuant to Section 1692a(6).").

While BANA may attempt to claim that it is the assignee/owner of Mr. Ward's debt, thus constituting a "creditor" or "assignee" outside the ambit of the § 1692a(6) definition of "debt collector," that is not a matter that can be resolved at the pleading stage. **BANA specifically identified itself as the "Loan Servicer" in the Notice of Default and identified Fannie Mae as the "Note Owner."** Dkt# 1-1 at 59. BANA even had the opportunity to clarify this assertion when it sought leave to amend its foreclosure complaint, but evidently did not feel it was important to do so. For his part, Mr. Ward alleged that BANA's involvement was limited to that of a default servicer. Complaint at ¶ 8.

For purposes of a Rule 12(b)(6) motion, Mr. Ward's allegations must be taken as true. Accordingly, and by BANA's own admissions, BANA began acting as a servicer of Mr. Ward's debt after the debt was in default. While BANA has simultaneously claimed that it is actually the owner of the debt, that is simply not a matter which can be resolved on a Rule 12(b)(6) motion.

### 2. *Even if BANA does not constitute a "debt collector," BANA is subject to the FDCPA pursuant to 15 U.S.C. § 1692f(6)*

As stated above, Plaintiff has alleged that BANA obtains servicing rights to debts owed to third parties after those debts are in default; this constitutes a "debt collector" under 15 U.S.C. § 1692a(6). Even if BANA did not meet this criterion, mortgage servicers still constitute "debt collectors" under § 1692a(6) *for the slightly narrower purposes of* 15 U.S.C. § 1692f(6). "Unlike under Sections 1692c(a)(2), 1692d, and 1692e, the definition of debt collector under Section 1692f(6) includes a person enforcing a security interest…Section 1692f(6) regulates more than just the collection of a money debt." *Dowers v. Nationstar Mortgage, LLC*, 852 F.3d 964, 971 (9th Cir. 2017) ("Here, Plaintiffs alleged that Nationstar threatened to take non-judicial action to

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

dispossess Plaintiffs of their home without a legal ability to do so. Such conduct is exactly what Section 1692f(6) protects borrowers against."). In this case, Mr. Ward has alleged that BANA attempted to nonjudicially foreclose on his home, during a judicial foreclosure proceeding, which is legally prohibited in Washington State. This is precisely the scenario envisioned by § 1692f(6), and BANA constitutes a "debt collector" for this purpose.

James Ward alleges specifically that BANA is a debt collector because it serviced the Loan after it was defaulted upon and it serviced the Loan on behalf of another entity. The Complaint reflects that Plaintiff borrowed money from another entity and not BANA. Complaint, ¶¶ 7, 37. The Ninth Circuit has held that FDCPA claims under § 1692f are enforceable against a loan servicer. *Greer v. Ocwen Loan Servicing, LLC.,* 2014 U.S. Dist. LEXIS 55878 (W.D. Wash., Apr. 21, 2014) (FDCPA's definition of debt collector exempts loan servicers as long as the debt was not in default at the time it was assigned); *Kilpakis v. JPMorgan Chase Fin. Co., LLC,* 229 F.Supp.3d 133 (2017) (A mortgage servicer is a debt collector if the mortgage was in default at the time the service began servicing the debt); *Forgues v. Select Portfolio Servicing, Inc.,* 2016 U.S. Dist. LEXIS 39461 (N.D. Ohio, Mar. 25, 2016) (A mortgage servicer is a debt collector under the FDCPA if the debt was in default at the time the servicing rights were assigned); *Taggart v. Norwest Mortg., Inc.*, 2010 WL 114946 at *10 (E.D. Pa. Jan. 11, 2010) (Wells Fargo, when acting as mortgage servicer, may be debt collector if complaint alleged that debt in default when it was obtained for servicing); *Johnson v. Wells Fargo Home Mortg., Inc*, 2007 WL 3226153 at *10 (D. Nev. Oct. 29, 2007) (if complaint had alleged that Wells Fargo had used ASC name to collect debt so as to indicate that third person was collecting, plaintiff's claim that Wells Fargo is a debt collector would have been viable); *Pike v. Bank of America*, 2016 U.S.Dist. LEXIS 18502 (N.D. Ohio, Feb. 12, 2016) (Creditors and mortgage servicers are excluded from the definition of "debt

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 17
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

collector," provided the creditor or servicer neither acquired the debt when it was in default nor treated the debt as if it were in default at the time of acquisition), citing *Bridge v. Ocwen Fed. Bank.*, 681 F.3d 355, 362 (6th Cir. Ohio 2012) (holding that "definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition."). Plaintiff alleges further that BANA used agents to effectuate the nonjudicial foreclosure as well as the judicial foreclosure. (Complaint at ¶ 38).

When BANA caused the trustee's sale to occur in 2017, such action was specifically prohibited under RCW 61.24.030(4). Any current effort by BANA's to collect on the Loan, including the transmittal of debt collection outside the pending judicial foreclosure also constitutes a violation of this section.

**G. Plaintiff Plausibly Pleaded A Claim For Abuse Of Process**

BANA offers a mere half-page argument that its actions do not constitute abuse of process. Motion at 11-12. The issue, however, is whether Mr. Ward has sufficiently pleaded an abuse of process claim, which he has done.

The elements of the tort of abuse of process are "(1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." *Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 806 (1985). The Court also approvingly cited the Restatement (Second) of Torts § 682, which states: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed." *Id.* "Thus, there must be an act after filing suit using legal process empowered

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1  by that suit to accomplish an end not within the purview of the suit." *Id.* (citing *Batten v. Abrams*,

2  28 Wn.App. 737, 748 (1981)).

3    James Ward specifically pleads that abuse of process has occurred because BANA sold his

4  home to Fannie Mae, via trustee's sale, without dismissing the judicial foreclosure in Jefferson

5  County, and BANA went back to Jefferson County, using a different law firm than the one which

6  initiated the lawsuit, to amend the complaint and obtain an unopposed order allowing leave to

7  amend in order to perpetuate the lawsuit and exact a bigger recovery from the Plaintiff after the

8  subject of said lawsuit had already been sold. Clearly, BANA has misused or abused the process

9  of foreclosure in order to exact a greater recovery from the Plaintiff from which it can lawfully do.

10  *Fite v. Lee*, 11 Wn.App. 21 (1974) (Misuse of process in a garnishment action may constitute

11  abuse of process); *Batten v. Abrams*, 28 Wn.App. 737 (1981) (No abuse of process unless the

12  plaintiff, after commencing an action, uses the legal process to achieve an end which is not within

13  the scope of proper prosecution of the action); *Loeffelholz v. C.L.E.A.N*, 119 Wn.App. 665 (2004)

14  (The gist of the action of abuse of process is the misuse or misapplication of the process, after it

15  has once been issued, for an end other than that which it was designed to accomplish. In other

16  words, the action requires a form of extortion, and it can be done in the course of negotiation,

17  rather than the issuance or any formal use of the process itself).

18    There is another aspect of BANA's aspect which constitutes abuse of process – BANA has

19  returned to Jefferson County Superior Court in an effort to set aside its own flawed nonjudicial

20  foreclosure sale, but has failed to include the alleged purchaser, Fannie Mae, thus making any such

21  remedy impossible (due to lack of standing and due process concerns). If Fannie Mae truly

22  purchased the property, then BANA cannot unilaterally set aside the sale, and thus is attempting

23

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 19
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

to use the judicial foreclosure proceeding to further harass Mr. Ward or to otherwise accomplish some extrajudicial purpose.

Finally, James Ward has specifically pleaded damages, including emotional distress as a result of having to continue to with the serial foreclosures caused by BANA years after the lawsuit was commenced and which continues well beyond the date the Property was sold to another entity. Additionally, he has suffered from loss of property and damages to his credit standing. Mr. Ward has been required to take time away from his business, causing him harm. Complaint at ¶ 41. As such, Plaintiff has sufficiently pleaded the tort of abuse of process.

### H. __In The Alternative, Plaintiff Respectfully Requests Leave To Amend__

Dismissal without leave to amend is proper only where it is clear that "the complaint could not be saved by any amendment." *In re Daou Sys., Inc.,* 411 F.3d 1006, 1013 (9th Cir. 2005). To the extent that Defendant's motion succeeds, Plaintiff James Ward respectfully requests leave to amend his Complaint.

### III.  __CONCLUSION__

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Rule 12(b)(6) motion to dismiss be denied.

Dated this 1st day of April, 2019.

**ANDERSON SANTIAGO, PLLC**

By: /s/ Jason D. Anderson
Jason D. Anderson, WSBA No. 38014
T. Tyler Santiago, WSBA No. 46004
Attorney for Plaintiff
787 Maynard Ave. S.
Seattle, WA 98104
(206) 395-2665
(206) 395-2719 (fax)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO
DISMISS - 20
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

**HA THU DAO, Attorney at Law**

By: /s/ Ha Thu Dao
Ha Thu Dao, WSBA No. 21793
Attorney for Plaintiff
c/o Barraza Law, PLLC
14245F Ambaum Blvd SW
Seattle, WA 98166-1421
(727) 269-9334
(206) 933-7863 (fax)

Plaintiff's Response to Defendant's Motion To
Dismiss - 21
2:19-CV-00185-RBL

ANDERSON|SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

## Certificate of Service

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Charles T. Meyer
Severson & Werson
19100 Von Karman Avenue Suite 700
Irvine, CA 92612
*Attorneys for Defendant*

  /s/ Jason D. Anderson
Jason D. Anderson

CERTIFICATE OF SERVICE - 1
2:19-CV-00185-RBL

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719