HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES H. WARD,

        Plaintiff,

   v.

BANK OF AMERICA, a National Association,

        Defendant.

CASE NO. 2:19-cv-00185

ORDER ON MOTION TO DISMISS

**INTRODUCTION**

THIS MATTER is before the Court on Defendant Bank of America, a National Association's (BANA) Motion to Dismiss the Complaint under Rule 12(b)(6). Dkt. #9. This action arises out of the potentially invalid nonjudicial foreclosure sale of Plaintiff James Ward's property and BANA's attempt to re-initiate judicial foreclosure proceedings over a year after the sale. Ward has sued BANA for negligence, negligent misrepresentation, per se and traditional violations of the Washington Consumer Protection Act (CPA), violations of the Fair Debt Collection Practices Act (FDCPA), and abuse of process.

BANA argues that Ward fails to state a claim for negligence because it owed Ward no duty of care. BANA also asserts that Ward's misrepresentation and CPA claims must be

dismissed because the allegations do not establish that BANA's actions proximately caused Ward to suffer damages. BANA also argues that Ward does not allege a sufficient injury for a CPA claim, which must consist of diminution of money or property. Ward's FDCPA claim is inadequate, according to BANA, because Ward does not allege that BANA is a "debt collector" within the meaning of the FDCPA or that it sold Ward's property without authority. Finally, BANA contends that Ward fails to explain how BANA utilized judicial processes to obtain an unlawful end.

For the following reasons, the Court GRANTS in part and DENIES in part BANA's Motion.

## BACKGROUND

According to the Complaint, Ward became the owner of the property at issue on July 25, 2005. Ward borrowed money from third party Countrywide Bank, FSB, executing a promissory note and deed of trust. Ward began missing payments on May 1, 2010, and on September 14, 2011, Countrywide assigned all benefits under the deed of trust to BANA. Acting as the default servicer, BANA filed a foreclosure action in Jefferson County Superior Court on August 8, 2014. The complaint sought to recover a principal sum of $312,096.50, $91,576.66 in interest, $1,023.51 for title search, $12,257.77 for escrow advances, $455.00 for property inspections, and $2,000.00 in attorneys' fees. Dkt. #1-1, Ex. C, at 24. Among the attorneys' fees was $660.29 for "commencing a nonjudicial foreclosure action that could not be completed." *Id*. at 23.

Despite initiating this judicial action, BANA proceeded to sell the property via trustee's sale. An auction took place on February 17, 2017, and the property was sold to Fannie Mae. The trustee's deed evidencing the sale was recorded on February 24, 2017. The property sold for $225,000.00, which constituted "satisfaction in full of the obligation then secured by said Deed

of Trust, together with all fees, costs, and expenses as provided by statute." Dkt. #1, Ex. D. The trustee's deed also incorrectly stated that "[d]uring foreclosure, no action was pending on an obligation secured by said Deed of Trust." *Id*.

On October 22, 2018, roughly 20 months after the trustee's deed was issued, BANA filed an unopposed motion for leave to amend its foreclosure complaint in Jefferson County Superior Court. The motion argued that leave should be granted because the trustee's sale was "possibly void" due to failure to meet a statutory prerequisite for nonjudicial sales. Dkt. #1, Ex. E. Specifically, RCW 61.24.030(4) states that a requisite for holding a trustee's sale is "[t]hat no action commenced by the beneficiary of the deed of trust is now pending to seek satisfaction of an obligation secured by the deed of trust in any court by reason of the grantor's default on the obligation secured." The motion also asserted that Ward would not be prejudiced because he was "still in arrears as to his payments under the Loan and has been since April 1, 2010." Dkt. #1, Ex. E. The Court granted BANA's motion. Ward had no legal representation at the time.

BANA's first amended complaint sought a larger judgment, including a interest of $181,282.35, late fees of $381.32, escrow advances of $24,273.48, other advances totaling $4,716.56, and attorneys' fees of $3,000.00. Dkt. #1, Ex. F. However, BANA also requested that the property be foreclosed upon with proceeds applied toward Ward's judgment. *Id*. As with the original complaint, BANA waived its right to a deficiency judgment. *Id*.

**DISCUSSION**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *id.*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**1. Negligence**

BANA argues that Ward's negligence claim should be dismissed because Washington law recognizes no duty between a borrower and a loan servicer unless the latter's activities exceed the scope of a conventional lender, which they did not here. BANA also claims that the

independent duty doctrine precludes a duty of care because the parties have contractual obligations to each other.

Ward responds by pointing to several cases, mostly from California, that found a duty during the loan modification process. *See, e.g., Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *2 (N.D. Cal. May 10, 2010). According to Ward, the six-factor balancing test applied in those cases to establish a duty also suggests that BANA owed a duty during the foreclosure process. *See Biakanja v. Irving*, 49 Ca.2d 647, 122 P.2d 293 (1958) (creating the six-factor test). In addition, Ward argues that the independent duty doctrine does not apply here because BANA's duty arose separately from any contractual relationship. Finally, Ward asserts that the Court should look to RCW 61.24.030 as establishing a duty during nonjudicial foreclosure.

"In order to prove actionable negligence, a plaintiff must establish the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury." *Schooley v. Pinch's Mkt., Inc.*, 134 Wash.2d 468, 474 (1998). "In the law of negligence, a duty of care is defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 243 P.3d 521, 526 (Wash. 2010). The existence of a duty is a question of law. *Estate of Bruce Templeton ex rel. Templeton v. Daffern*, 98 Wash. App. 677, 687, 990 P.2d 968, 974 (2000). The burden of establishing a duty belongs to the plaintiff. *Jackson v. City of Seattle*, 158 Wash. App. 647, 652, 244 P.3d 425, 428 (2010).

"So long as a loan servicer's activities do not exceed the scope of a conventional lender, the servicer will be treated as a lender for purposes of determining its duty to a borrower." *Smokiam*, 2017 WL 4224408, at *4 (citing *Johnson v. JP Morgan Chase Bank N.A.*, No. 14-5607

RJB, 2015 WL 4743918, at *8 (W.D. Wash. Aug. 11, 2015)). In Washington, lenders "do not owe a fiduciary duty to borrowers because they conduct their transactions at arm's length." *Id*. (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456, 458, 656 P.2d 1089, 1092 (1982). However, a fiduciary duty may exist where the lender is "thrust . . . into the role of an adviser, thereby creating a relationship of trust and confidence which may result in a fiduciary duty upon the bank to disclose facts when dealing with the customer." *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456, 459 (1982).

A party may also owe a duty based on a statute establishing a standard of care. *See Jackson v. City of Seattle*, 158 Wash. App. 647, 651 (2010); *Mix v. Ocwen Loan Servicing, LLC*, No. C17-0699JLR, 2017 WL 5549795, at *6 n.12 (W.D. Wash. Nov. 17, 2017). Washington courts look to the Restatement (Second) of Torts § 286 (1965) when making this determination. *Jackson*, 158 Wash. App. at 647. Section 286 provides, "The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part: (a) to protect a class of persons which includes the one whose interest is invaded, and (b) to protect the particular interest which is invaded, and (c) to protect that interest against the kind of harm which has resulted, and (d) to protect that interest against the particular hazard from which the harm results." Restatement (Second) of Torts § 286. Under traditional negligence principles, the existence of a duty "depends on mixed considerations of 'logic, common sense, justice, policy, and precedent.'" *Keates v. City of Vancouver*, 73 Wash. App. 257, 265 (1994) (quoting *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wash.2d 959, 962, 577 P.2d 580 (1978)).

Here, BANA is correct that it did not owe Ward a fiduciary duty as his loan servicer. There is no allegation that BANA exceeded the role of a traditional money lender by acting as

Ward's advisor. Ward is also misguided in citing out-of-jurisdiction case law establishing a duty of care during the loan modification process. Even if the six-factor balancing test applied in such cases suggested a duty during foreclosure, that test derives from California law and has never been used by a Washington court. *See Diffely v. Nationstar Mortg.*, LLC, No. C17-1370 RSM, 2018 WL 1737780, at *11-12 (W.D. Wash. Apr. 11, 2018) (observing that no Washington court has addressed whether there is a duty during loan modification and declining to apply the six-factor test from *Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958)); *Smokiam RV Resort LLC v. William Jordan Capital, Inc.*, No. C17-0885-JCC, 2017 WL 4224408, at *4 (W.D. Wash. Sept. 22, 2017) (also declining to apply *Biakanja*). The Court will not break new ground by relying on California law in a novel context.

Nonetheless, the Washington Deeds of Trust Act (DTA) is sufficient to establish a duty of care for the party carrying out a nonjudicial foreclosure. The DTA "sets forth the procedures and requirements for nonjudicial foreclosures." *Tran v. Bank of Am., N.A.*, No. CV12-1281-RSM, 2013 WL 64770, at *2 (W.D. Wash. Jan. 4, 2013). As a borrower who was foreclosed upon, Ward is within the class RCW 61.24 was enacted to protect. *See Frias v. Asset Foreclosure Servs.*, Inc., 181 Wash. 2d 412, 423 (2014) (holding that RCW 61.24.127 was enacted to benefit borrowers); *see also Bain v. Metro. Mortg. Grp., Inc.*, 175 Wash. 2d 83, 93 (2012) (explaining that the DTA must be interpreted in borrowers' favor because of the relative ease with which a nonjudicial sale can be carried out). In addition, Washington courts have found that RCW 61.24.030's safeguards were enacted to "ensure that the nonjudicial foreclosure process is fair and free from surprise." *See Cox v. Helenius*, 103 Wash. 2d 383, 387 (1985). Here, Ward's alleged harm arose from the surprise of having the foreclosure process re-initiated long after he thought his property had been definitively sold. RCW 61.24.030 thus protects borrowers

like Ward from harm flowing from the type of hazard present here. *See Jackson*, 158 Wash. App. at 651. It is logical and just to hold that the DTA creates a duty for parties who fail to follow the basic requirements for nonjudicial foreclosures.

The fact that BANA was the beneficiary and not the trustee also does not preclude the existence of a duty, at least not at this point. Dkt. #1-1, Ex. D, at 52. Although courts have recognized that only the trustee owes a duty of impartiality during foreclosure, RCW 61.24.030's prerequisites do not apply specifically to the trustee. *See Bain v. Metro. Mortg. Grp. Inc.*, No. C09-0149-JCC, 2010 WL 891585, at *4 (W.D. Wash. Mar. 11, 2010) (describing the trustee as a "neutral third party" with a fiduciary duty). Ward alleges that "BANA, through its agents, proceeded to ostensibly sell the Property via nonjudicial means pursuant to RCW Chapter 61.24 et seq." Dkt. #1, at 3. In addition, the deed of trust in this case allows BANA to "invoke the power of sale" upon the borrower's default, after which it need only "give written notice to the trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold." Dkt. #1-1, Ex. D, at 48. Taking the allegations in the Complaint as true, BANA had control over the foreclosure process and thus had a duty to Ward.

However, under RCW 61.24.127, a borrower who did not try to enjoin a flawed foreclosure while it was happening waives all but an exclusive list of post-sale claims. *Micklas v. Green Tree Servicing LLC*, No. C16-315RSL, 2016 WL 3551836, at *2 (W.D. Wash. June 30, 2016); *Bakhchinyan v. Countrywide Bank*, N.A., No. C13-2273-JCC, 2014 WL 1273810, at *6 (W.D. Wash. Mar. 27, 2014). That list consists of "claims related to common law fraud or misrepresentation, violations of the CPA, and violations of the DTA." *Bakhchinyan*, 2014 WL 1273810, at *6. "Pursuant to the waiver doctrine, '[a] party waives the right to postsale remedies where the party (1) received notice of the right to enjoin the sale, (2) had actual or constructive

knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.'" *Tran*, 2013 WL 64770, at *2 (quoting *Brown v. Household Realty Corp.*, 146 Wash.App. 157, 163, 189 P.3d 233 (2008)).

Ward may still be barred from bringing a negligence action if the waiver requirements are met. However, BANA makes no arguments regarding waiver and the allegations and evidence so far do not establish that Ward waived his claim. Although it seems likely that Ward would have been aware of the judicial action when the trustee's sale took place, the Notice of Trustee's Sale explicitly stated that no judicial action was ongoing. Dkt. #1-1, Ex. D, at 62. The Court thus cannot determine whether Ward had knowledge of his defense to foreclosure. *See Tran*, N.A., 2013 WL 64770, at *3 (holding that knowledge of facts necessary to establish elements of defense was sufficient). There is also no allegation or evidence indicating whether Ward actually tried to enjoin the sale. The Court therefore cannot dismiss the negligence claim based on waiver.

Finally, the independent duty doctrine does not preclude Ward's claim. The independent duty doctrine bars recovery of purely economic damages when a contractual relationship exists between the parties. *Wells v. Chase Home Fin.*, LLC, No. C10-5001RJB, 2010 WL 4858252, at *6 (W.D. Wash. Nov. 19, 2010). But the doctrine "does not bar recovery in tort when the defendant's alleged misconduct implicates a tort duty that arises independently of the terms of the contract." *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 393 (2010). Consequently, "[t]he test is not simply whether an injury is an economic loss arising from a breach of contract, but rather whether the injury is traceable also to a breach of a tort law duty of care arising independently of the contract." *Id*.

1  The Complaint does not allege that the parties have a contractual relationship. *Collins v. Seterus, Inc.*, No. C17-0943-JCC, 2019 WL 1254878, at *5 (W.D. Wash. Mar. 19, 2019) (declining to dismiss where allegations did not allege a contract between the parties). In addition, the DTA establishes a separate source of tort duty. *See Wells v. Chase Home Fin., LLC*, No. C10-5001RJB, 2010 WL 4858252, at *6 (W.D. Wash. Nov. 19, 2010). Ward's negligence claim thus survives dismissal.

**2.    Negligent Misrepresentation**

BANA attacks Ward's negligent misrepresentation claim by arguing Ward has not shown any action by BANA proximately caused an injury for which he can recover. Essentially, BANA contends that any damages Ward suffered were the result of his own uncontested default on his mortgage. If Ward did sustain damages, BANA contends that the independent duty doctrine preempts recovery because Ward's losses were purely contractual in nature.

Ward responds that he relied on BANA's misrepresentation in the trustee's deed that the property was definitively sold to Fannie Mae. According to Ward, his reliance on this inaccurate assertion caused him to lose possession and use of his property for the 20 months until BANA moved to amend his complaint. Ward argues that BANA's misrepresentation exposed him to a larger money judgment, including a deficiency judgment. Ward also points to the credit damage and emotional distress caused by the prolonged foreclosure proceedings.

"A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that: (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false

information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages." *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 198 Wash. App. 594, 613 (2017). "A defendant may 'participate' in making a negligent misrepresentation without being in direct communication with the plaintiff." *Id*.

Ward has stated a viable claim for negligent misrepresentation. At the very least, Ward has plausibly alleged a causal connection between BANA's misrepresentation and his emotional distress. *See Bloor v. Fritz*, 143 Wash. App. 718, 744 (2008) (emotional distress damages are recoverable in an action for negligent misrepresentation). It is not implausible that Ward's sudden discovery of his renewed and increased financial risk caused him emotional turmoil. Ward's negligent misrepresentation claim also escapes the independent duty doctrine for the same reasons as his negligence claim.

**3.     Per Se Violation of Washington Consumer Protection Act**

BANA argues that Ward's claim for a per se CPA violation fails because he does not identify any legislative declaration indicating that a violation of RCW 61.24.030(4) constitutes an unfair or deceptive act or practice. BANA also contends, again, that Ward fails to plausibly allege that BANA's actions caused any damages. Ward responds by arguing that his claim for a violation of the FDCPA alone suffices for a per se violation of the WCPA. Ward also argues that a private cause of action for defects occurring during the nonjudicial foreclosure process can be brought under the WCPA. Finally, Ward contends that BANA's violation proximately caused damages "including loss of his home due to wrongful foreclosure, credit damages, emotional distress, and money being spent to address against the judicial foreclosure in Jefferson County." Dkt. #10, at 13.

The elements of a CPA claim are "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986). The first three elements "may be established by a showing that the alleged act constitutes a per se unfair trade practice." *Id*. at 786. However, for a statutory violation to qualify as a per se CPA violation the legislature must have explicitly declared the relationship between the statute and the CPA. *Anderson v. Valley Quality Homes, Inc.*, 84 Wash. App. 511, 516 (1997). "[T]he Legislature, not [the] court, is the appropriate body to establish the interaction between other statutes and the CPA by declaring a statutory violation to be a per se unfair trade practice." *Hangman Ridge*, 105 Wash. 2d at 786.

Ward's Complaint does not measure up to this requirement. RCW 61.24.135, entitled "Consumer protection act – Unfair or deceptive acts or practices," provides a list of the DTA violations that also constitute per se violations of the CPA. That list does not include RCW 61.24.030, which is the source of BANA's potential violation here. By expressly identifying the sections of the DTA designed to prevent unfair or deceptive practices, the drafters of the statute must have intended to exclude all other sections that were not identified. *See Klem v. Washington Mut. Bank*, 176 Wash. 2d 771, 784 (2013) ("The legislature has specifically stated that certain violations of the deed of trust act are unfair or deceptive acts or practices for purposes of the CPA.").

Ward's claim therefore fails and must be dismissed. If Ward wishes to base his claim for a per se CPA violation on the FDCPA, he does not do so in his Complaint. Ward may file an amended complaint explaining this basis for his claim.

1. **4.** **Washington Consumer Protection Act**

BANA contends that Ward's CPA claim must be dismissed because Ward does not identify how his property interest or money was diminished by BANA's actions. While Ward emphasizes the potential judgment against him, his claim is premature because he does not allege that he has actually paid anything to date. BANA also insists that, even if Ward has suffered damages, they derive from his own default. In response, Ward reiterates that he suffered damages in the form of lost possession and title of his property and the inflated potential judgment, which would not exist if BANA had properly carried out the nonjudicial sale. According to Ward, the future judgment is "not speculative, but the guaranteed result of BANA's intentional practice." Dkt. #10, at 14.

"Washington requires a private CPA plaintiff to establish the deceptive act caused injury." *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 57 (2009). The injury must be to the plaintiff's "business or property." *Id*. "[D]amages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA." *Id*. "However, the injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" *Id*. Thus a plaintiff's temporary loss of use of property may qualify. *See, e.g., Mason v. Mortgage Am., Inc.*, 114 Wash.2d 842, 854 (1990). "Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt" may also constitute an injury under the CPA. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d 27, 62 (2009).

Here, the Complaint alleges that BANA's conduct "will have a devastating effect on Plaintiff's creditworthiness for many years," "forced [him] to spend time and money to hire counsel to defend against the current judicial foreclosure," and caused Ward to incur expenses in

"seeking counsel to determine his legal rights and responsibilities." DKt. #1, at 12. The Complaint also identifies the substantially larger judgment BANA seeks in the first amended complaint. *Id*. at 11.

The Court agrees with BANA that the larger judgment sought in the renewed judicial proceedings is speculative and cannot constitute Ward's injury in this case. Given that BANA's amended complaint waives the right to a deficiency judgment, it is unclear whether Ward will even be subjected to increased liability. However, Ward's allegation that BANA's conduct caused him to incur increased legal fees to determine his risk and defend against the renewed state court litigation is sufficient to state a plausible claim. Ward alleges that BANA intentionally manipulated the foreclosure process by carrying out a nonjudicial foreclosure that it knew would be invalid. If BANA had terminated the judicial proceedings prior to selling the property, Ward would not have incurred more legal fees to assess his risk and once again litigate the foreclosure action. Viewing the allegations in the light most favorable to Ward, he has sufficiently pled causation and damages.

In addition, while the Complaint does not state it, the factual allegations could also support damages in the form of lost possession. In Washington, a mortgagor can only take possession of real property upon foreclosure and sale. RCW 7.28.230; *Jordan v. Nationstar Mortg.*, LLC, 240 F. Supp. 3d 1114, 1127 (E.D. Wash. 2017). The Complaint alleges that BANA carried out a nonjudicial foreclosure it knew to be ineffective, causing Ward to believe he had lost possession of his home until BANA reinitiated judicial proceedings.

**5.     Fair Debt Collection Practices Act**

According to BANA, Ward's claim under § 1692e of the FDCPA fails because he does not adequately allege that BANA is a "debt collector" as defined in 15 U.S.C. § 1692a(6). In

addition, BANA argues that Ward cannot maintain a claim under § 1692f(6) because there is no allegation that BANA sought to carry out a non-judicial foreclosure without authority. Ward counters that a servicer is only exempt under § 1692a(6) if they began servicing the loan *before* the homeowner defaulted. Here, however, Ward contends that BANA began servicing the loan over a year after he defaulted. Furthermore, Ward argues that BANA lacked authority to carry out the nonjudicial sale of Ward's property because BANA had not satisfied all of the prerequisites for sale under RCW 61.24.030. In particular, BANA violated RCW 61.24.030(4) by carrying out the nonjudicial foreclosure while judicial proceedings were ongoing.

a.  *Section 1692e Claim*

To state a claim under the FDCPA, a plaintiff must show: "(1) the plaintiff has been the object of collection activity arising from a consumer debt, (2) the defendant collecting the 'debt' is a 'debt collector' as defined in the Act, and (3) the defendant has engaged in any act or omission in violation of the prohibitions or requirements of the act." *Yrok Gee Au Chan v. North American Collectors, Inc.*, 2006 WL 778642, at *3 (N.D. Cal. March 24, 2006). The Ninth Circuit has tied § 1692a(6)'s definition of a "debt collector" to § 1692a(5)'s definition of "debt," which is an "obligation . . . of a consumer to pay money." *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017). Consequently, when a loan servicer only seeks to "retake and resell the security" rather than "collect money from the borrower," they are not a "debt collector" as defined in the FDCPA. *Id.* (loan servicer that initiated nonjudicial foreclosure in state that barred deficiency judgments was not a "debt collector"). However, judicial foreclosure proceedings seeking a deficiency judgment can constitute "debt collection" activities. *McNair v. Maxwell & Morgan PC*, 893 F.3d 680, 683 (9th Cir. 2018).

Furthermore, even if a loan servicer falls within the definition of a "debt collector," they may be exempt under § 1692a(6)(F) if they began servicing the loan before the plaintiff defaulted. *See De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011); *Corales v. Flagstar Bank, FSB*, 822 F. Supp. 2d 1102, 1112 (W.D. Wash. 2011). "Although the Act does not define 'in default,' courts interpreting § 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue." *De Dios*, 641 F.3d at 1074. A debt that is merely outstanding is not necessarily in default. *Amelina v. Manufacturers & Traders Tr. Co.*, No. 14CV1906 WQH (NLS), 2015 WL 7272224, at *7 (S.D. Cal. Nov. 17, 2015). On the other hand, several courts have declined to dismiss an FDCPA claim where payments were overdue when the loan was assigned and the defendant failed to meet its burden of showing default occurred prior to assignment. *See, e.g., Cochran v. The Bank of New York Mellon Tr. Co. N.A.*, No. CV 15-3209-GHK (JCX), 2015 WL 4573890, at *3 (C.D. Cal. July 29, 2015); *Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-CV-03646 JSC, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013).

Here, BANA qualifies as a "debt collector" under § 1692a(6). While BANA expressly waived its right to a deficiency judgment in the Jefferson County proceedings, it also sought a money judgment from Ward. Dkt. #1, Exs. C & F. Washington law states that a waiver eliminates a servicer's ability to collect a deficiency judgment, *see* RCW 61.12.070, but the amount of deficiency can only be calculated relative to the court's judgment and the property's sale price at foreclosure. RCW 61.12.100 (deficiency is the amount "remaining unsatisfied after applying the proceeds of the sale of mortgaged property"). This means that, between the Court's judgment and the foreclosure sale, a servicer that has waived its right to a deficiency nonetheless has a money judgment that would be enforceable, for example, in bankruptcy proceedings. *See*

*In re Quintana*, 915 F.2d 513, 516 (9th Cir. 1990) (holding that, under Idaho law, a creditor's waiver of deficiency judgment was irrelevant until after the foreclosure sale). Consequently, BANA sought to enforce Ward's obligation to pay money, bringing it within § 1692a(6)'s definition of a "debt collector."

BANA has also failed to show that Ward defaulted after BANA became the loan servicer. Ward alleges that BANA serviced his loan "when it was in default."[1] Dkt. #1, at 12. According to BANA's own complaint in the Jefferson County proceedings, Ward began missing payments on May 1, 2010. Dkt. #1-1, at 21. However, Countrywide did not assign the deed of trust to BANA until September 21, 2011. *Id*. BANA then sent Ward a notice of default on November 28, 2012. *Id*. at 32, 57. While Ward's mortgage was not necessarily in default in May of 2010, Ward missed payments for nearly a year and a half before BANA became the loan servicer. *See Cochran*, 2015 WL 4573890, at *3 (finding it plausible that the plaintiff defaulted prior to the date the notice of default was recorded because plaintiff had missed payments for years). BANA says nothing about when Ward defaulted and thus fails to meet its burden on a motion to dismiss.

b.  *Section 1692f(6) Claim*

Section 1692f(6) prohibits: "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 971 (9th Cir.

---

[1] Although Ward's wording is a bit ambiguous as to whether BANA serviced the loan *exclusively* while it was in default, the Court will read the allegations in the light most favorable to Ward.

2017). "Unlike under Sections 1692c(a)(2), 1692d, and 1692e, the definition of debt collector under Section 1692f(6) includes a person enforcing a security interest." *Id*.

Although Ward may be able to state a claim based on BANA's nonjudicial foreclosure, he does not actually plead such a claim in the Complaint. Instead, Ward bases his § 1692f(6) claim on BANA's attempt to reinitiate judicial proceedings after it had already carried out a nonjudicial foreclosure sale. Dkt. #1, at 12-13. "Section 1692f(6) regulates nonjudicial foreclosure activity," not judicial foreclosures. *Dowers*, 852 F.3d at 971. Ward therefore fails to state a plausible claim under § 1692f(6) of the FDCPA, but may amend his Complaint to do so.

**6.     Abuse of Process**

BANA argues that Ward fails to allege that BANA's re-initiation of judicial foreclosure proceedings accomplished an unlawful end. According to BANA, its use of the judicial process simply aimed to ensure finality when the nonjudicial foreclosure could be void. Ward responds that BANA's act of starting the judicial foreclosure process, then conducting a nonjudicial foreclosure, then switching back to judicial foreclosure was calculated to exact a larger recovery. Ward also contends that the current judicial proceedings must be intended to "harass Mr. Ward or to otherwise accomplish some extrajudicial purpose" because BANA failed to join Fannie Mae, which is a necessary party if BANA wants to set aside the sale. Dkt. #10, at 19-20.

"For the tort of abuse of process, 'the crucial inquiry is whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end.'" *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 103 Wash. 2d 800, 806 (1985) (quoting *Gem Trading Co. v. Cudahy Corp.*, 92 Wash.2d 956, 963 n. 2 (1979)). The elements of the tort are: "(1) the existence of an ulterior purpose—to accomplish an object not within the proper scope of the process—and (2) an

act in the use of legal process not proper in the regular prosecution of the proceedings." *Id*. (quoting *Fite v. Lee*, 11 Wash. App. 21, 27 (1974)). "[T]he gist of the action is the misuse or misapplication of the process, *after it has once been issued*, for an end other than that which it was designed to accomplish." *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 119 Wash. App. 665, 699 (2004) (emphasis in original). "In other words, the action requires 'a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'" *Id*. at 699-700 (quoting *Batten v. Abrams*, 28 Wash. App. 737, 746 (1981)).

Ward fails to allege how BANA used the judicial foreclosure process as a mere tool to achieve some further, unlawful purpose. Ward's claim boils down to a belief that BANA may not legally return to court and re-initiate foreclosure proceedings after a nonjudicial sale of dubious validity. But this is exactly what court proceedings *are* intended for—deciding legal questions. Ward does not plausibly allege that BANA's actions were intended to harass him or use the foreclosure process as leverage to obtain some nefarious goal. Instead, Ward alleges that BANA is seeking a judgment greater than he is legally entitled to in light of the prior sale.[2] This is a valid argument for the Jefferson County Superior Court but not the basis for an abuse of process claim.

## CONCLUSION

Ward's claims for per se CPA violation, violation of FDCPA section 1692f(6), and abuse of process are DISMISSED with leave to amend. BANA's Motion to Dismiss is otherwise DENIED with respect to all remaining claims. Ward has until 21 days after the date of this Order

---

[2] The fact that BANA waived its right to a deficiency judgment casts further doubt on the claim that BANA's botched nonjudicial sale was a calculated attempt to procure a larger judgment.

to sufficiently amend his Complaint and cure the deficiencies described above. BANA may renew its motion to dismiss if, in their view, the Complaint remains insufficient.

IT IS SO ORDERED.

Dated this 14th day of May, 2019.

_____
Ronald B. Leighton
United States District Judge

ORDER ON MOTION TO DISMISS - 20