Hon. Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JAMES H. WARD,

               Plaintiff,

   vs.

BANK OF AMERICA, a national association,

               Defendant.

NO.  2:19-cv-00185-RBL

**FIRST AMENDED COMPLAINT**

[JURY TRIAL DEMAND]

Plaintiff, JAMES H. WARD, alleges as follows:

**PARTY, JURISDICTION AND VENUE**

1.     Plaintiff James H. Ward is a resident of King County, Washington.

2.     Defendant Bank of America ("BANA") is a national association which holds and services mortgage loans secured by real property located in the State of Washington.  BANA acted as the loan servicer and debt collector of a mortgage loan the Plaintiff obtained but which was extinguished by nonjudicial foreclosure in 2017.

3.     All acts complained herein during the relevant times were committed by BANA directly, or through its employees, agents, representatives and attorneys.

4.     The Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332 as they are citizens of different states and the amount of controversy claimed by Plaintiff exceeds $75,000.00.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1  Alternatively, the Court has jurisdiction because Plaintiff alleges violations of federal statutes by

2  the Defendants.

3       5.     The Western District of Washington is the proper venue because the Plaintiff

4  resides in Jefferson County, Washington.

5  ## FACTS

6       6.     Plaintiff was the owner in fee simple of the real property ("the Property"), by

7  warranty deed recorded July 25, 2005, under Jefferson County Recorder's Office Number

8  501020.  The Property is located at 1427 1st Street, Port Townsend, WA 98368 and further

9  described as:

10      THE NORTH 75 FEET OF THE WEST ½ OF THE UNNUMBERED BLOCK
    LYING SOUTHERLY OF BLOCK 308, OF THE SUPPLEMENTAL PLAT

11      OF THE EISENBEIS ADDITION TO THE CITY OF PORT TOWNSEND, AS
    PER PLAT RECORDED IN VOLUME 2 OF PLATS, PAGE 24, RECORDS

12      OF JEFFERSON COUNTY, WASHINGTON.

13  (**Exhibit A**, Deed vesting title upon James H. Ward)

14       7.     Plaintiff borrowed money from Countrywide Bank, FSB, and executed a

15  promissory note and a deed of trust on or about November 21, 2007.  The Deed of Trust securing

16  the Property was recorded in the public records of Jefferson County, under Auditor's File

17  Number 529697 (**Exhibit B**, Deed of Trust).

18       8.     Defendant BANA, ostensibly acting as the default servicer for Fannie Mae, filed

19  Jefferson County Superior Court case number 14-2-00159-1 on August 8, 2014.  The foreclosure

20  complaint stated that Plaintiff failed to pay (inclusive of the last payment due and owing as of

21  May 1, 2010), declaring the Loan to be immediately accelerated, and seeking foreclosure of

22  Plaintiff's property through judicial means (**Exhibit C**, 2014 Foreclosure Complaint (exhibits

23

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

thereto omitted here for brevity)).  At all times relevant herein, BANA exclusively serviced the Loan while it was in default.

9.      In the 2014 Complaint for foreclosure, BANA sought reimbursement in the amount of $12,257.77 for escrow advances and $455.00 for property inspections (**Exhibit C**, ¶ 10).  BANA requested $2,000.00 in attorney's fees relating to the prosecution of the judicial foreclosure (**Exhibit C**, ¶ 10).  In particular, BANA requested attorney's fees and costs in the amount of $660.29, for "commencing a nonjudicial foreclosure action that could not be completed (**Exhibit C**, ¶ 11).  From the complaint, it can be inferred that BANA had previously initiated a nonjudicial foreclosure prior to filing the judicial foreclosure in the state court.

10.     While the judicial foreclosure lawsuit languished in the state court, BANA, through its agents, proceeded to ostensibly sell the Property via nonjudicial means pursuant to RCW Chapter 61.24 et seq. An auction sale took place on February 17, 2017 at the Jefferson County Courthouse pursuant to a Notice of Trustee's Sale recorded under the Auditor's File Number 602747.

11.     The Trustee's Deed evidencing said sale, as recorded on February 24, 2017, under Auditor's File Number 606086, recites that BANA, as the "then holder of the indebtedness" directed the trustee to sell the Property to the successful bidder, Fannie Mae, for the sum of $225,000.00.  Such amount was for "the satisfaction in full of the obligation then secured by said Deed of Trust, together with all fees, costs, and expenses as provided by statute." (**Exhibit D**, Trustee's Deed, ¶¶ 5-10).

It is not presently known whether (despite its representations) Fannie Mae did, in fact, pay any amount of money for the supposed purchase of the property.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

12.     Despite BANA's pending judicial foreclosure action in Jefferson County, the Trustee's Deed incorrectly declares that "During foreclosure, no action was pending on an obligation secured by said Deed of Trust." (**Exhibit D**, ¶ 8).  The Trustee's Deed vested all rights and interests in the Property into the name of Fannie Mae.

13.     Approximately 20 months after the Trustee's Deed was issued, on October 22, 2018, taking advantage of the fact that Plaintiff was not represented by counsel, BANA filed an unopposed motion for leave to amend its foreclosure complaint in Jefferson County Superior Court, admitting that "While BANA's judicial foreclosure action was pending in the Superior Court of Washington, the trustee's sale of the Property was held on February 17, 2017, and the TDUS was recorded on February 24, 2017."  Through this motion, BANA acknowledged that "**Leave to Amend Should Be Granted Because the Trustee's Sale of the Property is Possibly Void**." (**Exhibit E**, Motion for Leave to Amend)[1].

14.     BANA further asserted in its Motion for Leave that Plaintiff will not be prejudiced in any way, stating " . . . **Mr. Ward is still in arrears as to his payments under the Loan and has been since April 1, 2010.**"  BANA also rationalized that ". . . leave to amend will provide Mr. Ward additional statutory time to make his payments current under the Loan."  BANA justified its request further, stating that "granting leave to amend to rescind the trustee's sale is erring on the side of caution and will ensure that the safeguards of the DTA are satisfied."  (**Exhibit E**).

15.     Thereafter, having been granted leave by the state court, BANA filed its First Amended Complaint ("FAC").  The FAC now contains BANA's prayer for foreclosure of the Property, possession, and a money judgment which includes (1) principal sum of $312,096.50; (2)

---

[1] For clarity: Exhibit E to this Complaint includes the exhibits originally filed with BANA's motion, which include repeated alphabetically-named exhibits therein.

FIRST AMENDED COMPLAINT - 4

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

interests of $181,282.35 plus $57.71 per day from November 9, 2018 to the date of judgment; (3) late fees in the amount of $381.32; (4) escrow advances of $24,273.48; (5) other advances including trustee's fees, title fee, advertising costs related to foreclosure, mailing fee and recording fees of $4,716.96, and (7) attorney's fees of $3,000.00, if the action is not contested.  These figures amount to more than $500,000.00.  (**Exhibit F,** FAC).

While paragraph 17 of the FAC asserts that BANA will not pursue a deficiency judgment against Mr. Ward, further down that very same page, <u>BANA specifically requests a judgment against Mr. Ward personally</u>.  *See* Ex. F.  The very first sentence of the FAC also identifies "your indebtedness" (referring to Mr. Ward) as being over $500,000.00, and the greater context of the proceeding (in that BANA already sold the property and has questionable standing to reinstitute any proceedings at all) strongly suggests that BANA is seeking (or would seek) a deficiency judgment.  As BANA could easily have made clear that the FAC was an *in rem* proceeding, but failed to do so, this only furthers the conclusion that BANA is seeking, or could seek, a deficiency judgment.  In any event, the contradictory statements in the FAC left Mr. Ward confused as to the state of his risk and potential liability on a property which was already unlawfully sold.

### COUNT ONE: NEGLIGENCE

16.    The elements of a cause of action for negligence are (1) duty, (2) breach of duty, (3) causation, and (4) damages. Under Washington law while a financial institution customarily owes no duty of care to a borrower when the institution's involvement in the transaction does not exceed the scope of its conventional role as a mere lender of the money, however, special circumstances may give rise to such a duty. The special circumstances giving rise to a duty owed by the financial institution to the borrower include (1) the extent to which the transaction was intended to affect the borrower; (2) the foreseeability of harm to the borrower; (3) the degree of

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    certainty that the borrower would suffer injury; 4) the closeness of the connection of the

2    institution's conduct and the injury suffered.

3        17.    As a default servicer, BANA held the power to initiate foreclosure upon the

4    Property servicing as collateral of the Loan the Plaintiff obtained.  BANA has discretion to

5    utilize either the judicial or nonjudicial means to foreclose.  BANA knew that nonjudicial and

6    judicial foreclosure would affect the Plaintiff as the borrower differently; the nonjudicial

7    foreclosure would extinguish the debt in its entirety and there would not be a deficiency

8    judgment; the judicial foreclosure process, however, would likely to subject Plaintiff to a large

9    deficiency judgment based on the length of the default (which was also due to BANA's actions).

10        18.    The Washington Deed of Trust Act (DTA) establishes a duty of care for the party

11    carrying out a nonjudicial foreclosure by setting forth the procedures and requirements for such a

12    proceeding. As a borrower, Plaintiff is within the class the DTA was enacted to protect.

13    Although BANA is not the trustee, it claims to be the beneficiary and possessed the right to

14    invoke, and did invoke the power of sale upon the Plaintiff's default by directing the trustee to

15    initiate and completed a nonjudicial foreclosure against the Plaintiff and his Property; BANA

16    had control over the trustee as its agent for purpose of the nonjudicial foreclosure.

17        19.    The DTA mandates "that no action commenced by the beneficiary of the deed of

18    trust is now pending to seek satisfaction of an obligation secured by the deed of trust in any court

19    by reason of the grantor's default on the obligation secured." RCW 61.24.030(4).  By directing

20    the trustee to initiate nonjudicial foreclosure and selling the Plaintiff's Property in August of

21    2017, while its foreclosure lawsuit (commenced in 2014) was still pending in Jefferson County

22    Superior Court, BANA failed to comply with this basic requirement dictated by the DTA;

23    BANA is negligent for violating the duty created by RCW 61.24.030(4).

FIRST AMENDED COMPLAINT - 6

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

20.     Regardless of how Plaintiff's claim against BANA for negligence based on the violation of RCW 61.24.030(4), BANA is liable to Plaintiff for the damages it inflicted.

21.     Plaintiff's claim for negligence (based either on a violation of the DTA, or as a claim for violation of one of the requirements of the statute), seeking postsale remedies, and which was filed within two years of the Trustee's sale, falls within the exceptions of RCW 61.24.127, and is not subject to any waiver doctrine.

22.     Here, BANA began by suing Plaintiff for judicial foreclosure in state court, and after three years, switched to nonjudicial foreclosure and sold the Property to Fannie Mae.  After selling the Property and ostensibly transferring title to Fannie Mae, BANA went back to the state court to resume the judicial foreclosure, claiming that it had potentially invalidated the nonjudicial foreclosure.  There cannot be a closer connection between BANA's lengthy and sloppy foreclosures to the misery and damages suffered by Plaintiff as the borrower – instead of having finality, he is now facing foreclosure, again, and a potentially huge deficiency judgment demanded by BANA in the amended complaint filed in the state court.  The facts of this case establish that BANA has utilized its knowledge and expertise as default servicer to impose the maximum possible damages upon Plaintiff as the borrower.

23.     BANA's breach of the duty owed to Plaintiff directly has inflicted different types of damages upon Plaintiff including loss of possession due to faulty nonjudicial foreclosure, a possible money judgment including a deficiency judgment, credit damages, and anguish and pain resulting from serial foreclosures and lack of finality.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

24.     BANA sued Plaintiff in state court to foreclose upon the Property in 2014.  While that case was still pending, BANA proceeded with nonjudicial foreclosure and allegedly "sold"

FIRST AMENDED COMPLAINT - 7

the Property at auction on February 17, 2017, and recorded the Trustee's Deed on February 24, 2017, which legally vested title in the name of Fannie Mae.  However, in 2018, BANA came back to the state court to resume judicial foreclosure on the ground that the nonjudicial foreclosure and Trustee's Sale of February 17, 2018 could be void for BANA's own failure to comply with RCW 61.24.030(4).

25.     BANA's Amended Complaint in Jefferson County Superior Court (**Exhibit F**, FAC), suffers from internal inconsistencies and contains false allegations.  First and foremost, since the nonjudicial foreclosure and trustee's sale of 2017 already vested legal title upon Fannie Mae, BANA no longer has standing to pursue Plaintiff for judicial foreclosure. Second, one part of the Amended Complaint seeks recovery of the collateral or interest in rem only, another part of the Amended Complaint demands payments from Plaintiff for amounts due on the Loan as well as a deficiency judgment against Plaintiff.

26.     Existing tort law provides that one who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

27.     In this case, BANA is in the business of being a lender and a loan servicer.  It (1) supplies information for the guidance of borrowers regarding their mortgage loans, including whether a particular loan, due to default status, is under judicial or nonjudicial foreclosure; (2) BANA knew or should have known that the legal processes and information about the foreclosure of Plaintiff's Property, which are published in certain newspaper and otherwise made publicly available, would be relied upon by the Plaintiff and the public; especially, lenders, credit

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

reporting agencies, credit furnishers, prospective purchasers of real property. BANA knew and should have known that that the processes it used and the information it supplied to Plaintiff and the public were deceptive or at a minimum, inaccurate and misleading;  (3) BANA was negligent in publishing information about the nonjudicial foreclosure and the trustee's sale as final disposition of the Property, and is further negligent for resuming the judicial foreclosure in Jefferson County, knowing that it has no title, interest or rights in the Property[2]; (4) BANA has unnecessarily and unreasonably prolonged the judicial foreclosure in Jefferson County Superior Court for years even after it had sold the Property at auction to Fannie Mae;  (5) Plaintiff and the public have no choice but relied upon the information provided by BANA, and (6) BANA's misrepresentations or confusing information about the foreclosure proximately caused Plaintiff substantial damages, including emotional distress.

28.     BANA knew that (1) Plaintiff must rely upon BANA's representations concerning the status of the Loan and the Property, including how much was owed, as well as the fact that the Property was sold at trustee's auction in 2017 which extinguished the debt; (2) BANA misled Plaintiff and the public by representing that the Property was foreclosed upon and sold to Fannie Mae via trustee's deed recorded in the public records of Jefferson County; (3) BANA was negligent in dragging the lawsuit in Jefferson County out for years while selling the Property at trustee's sale, and (4) having sold the Property, BANA now resumes prosecution of the lawsuit in Jefferson County, demanding much more money from the Plaintiff, including a deficiency judgment that BANA knew would not be legally permissible, and forcing Plaintiff to hire counsel to defend against the current wrongful foreclosure.

---

[2] Since the Property was sold at auction and Fannie Mae became the purchaser/new owner, there was no longer any loan for BANA to service.

FIRST AMENDED COMPLAINT - 9

29.     By its negligent misrepresentations, BANA has subjected Plaintiff to severe emotional distress as well as certain physical manifestation of such severe emotional distress. Plaintiff has experienced anxiety, confusion and depression as a result of BANA's treatment of him and his Property. These are tort damages that are compensable under the tort of negligent misrepresentation.

### COUNT THREE: PER SE VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

30.     Washington's Consumer Protection Act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.  Its purpose is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts and practices in order to protect the public and foster fair and honest competition."  RCW 19.86.920.  The CPA is to be "liberally construed that its beneficial purposes may be served."  RCW 19.86.920.

31.     A *per se* violation of the CPA is proven through (1) the existence of a pertinent statute; (2) violation of that statute; (3) the violation was the proximate cause of damages sustained; and (4) they were within the class of people the statute sought to protect.

32.     In this case, BANA, through its trustee and other agents, carried out the trustee's sale of Plaintiff's Property in 2017 while its judicial foreclosure action was still pending in Jefferson County Superior Court in violation of the Deed of Trust Act, RCW 61.24.030(4).  This action also constitutes a violation of the Fair Debt Collection Practices Act.

33.     In particular, 15 U.S.C. § 1692f(6) regulates more than simply the collection or attempted collection of money, but also prohibits:

[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if — (A) there is no present right to possession of the

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

34.    At the time BANA initiated the nonjudicial foreclosure in 2017, there was a statutory prohibition of such act to dispossess the owner of the property.  RCW 61.24.030(4) prohibits nonjudicial foreclosure when there is a pending action in state court seeking the same remedy.  In 2017 when BANA initiated the nonjudicial foreclosure, there was already an action commenced by BANA, and pending in Jefferson County Superior Court seeking satisfaction of the mortgage debt based on Plaintiff's default that obligation secured by the deed of trust.  This prohibition implicates § 1692f(6)(A).  In other words, by initiating and conducting the nonjudicial foreclosure, BANA was taking nonjudicial action to effect dispossession of the property while being without the legal ability to do so at that time.  *Dowers v. Nationstar Mort., LLC*, 852 F.3d 964, 971 (9th Cir. 2017).

35.    A violation of the FDCPA has been held to constitute a *per se* violation of Washington Consumer Protection Act ("CPA"). "When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA . . . under state and federal law, reflecting the public policy significance of the industry." *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27 (2009) (citing 15 U.S.C. § 1692); *see also Hoffman v. Transworld Sys. Inc.*, 2018 WL 5734641, at *8 (W.D. Wash. Nov. 2, 2018).

36.    BANA's violation of § 1692f(6) constitutes a *per se* violation of the CPA and proximately caused the injuries and damages Plaintiff suffers by way of having to defend against BANA's current and successive judicial foreclosure demanding a foreclosure judgment in excess of $500,000.00.  As described elsewhere herein, Plaintiff has suffered compensable injury which

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

is the direct result of BANA's actions, including but not limited to incurring out of pocket costs and attorney's fees in connection with determining his legal rights and responsibilities, thus satisfying the elements of a *per se* CPA claim.

## COUNT FOUR: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

37.     Defendant BANA violated the Washington Consumer Protection Act ("CPA") as to each of the five elements: it has committed one or more (1) unfair or deceptive act or practice; (2) in trade or commerce; (3) that has an impact on the public interest; (4) resulted in injury to the Plaintiff's business or property; and (5) the injury and damages suffered were proximately caused by BANA.

38.     The business of owning and servicing mortgage loans (including foreclosure as a means of seizing real property as collateral by BANA) has been adjudicated by Washington courts to be occurring in commerce and impacting an important public interest. As servicer, BANA uses the internet to advertise and to communicate with borrowers from their locations which are outside of the State of Washington.  BANA uses the mail, the telephone and the internet to transmit notice of intent to accelerate, periodic statements, notice of default, debt validation, notice of trustee's sale, and other correspondence to borrowers including the Plaintiff and receives substantial compensation for their services and part of their compensation comes directly from payments made by borrowers.

39.     In this case, BANA's actions constitute unfair or deceptive acts or practices because it did nothing in the judicial foreclosure for years and went ahead with a nonjudicial sale of the Property.  BANA is further acting unfairly because it waited nearly two more years before seeking to foreclose on the same property after it was sold at auction to Fannie Mae.  In this whole process, Plaintiff is completely fault-free.  Yet, BANA continues to subject him to more debt collection and

ANDERSON | SANTIAGO
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1   foreclosure.  It is unfair because in amending its foreclosure complaint in the state court, BANA

2   added more interests, fees and costs to the proposed judgment; where these interests, fees and costs

3   should not have been allowed to accrue because BANA had already sold the Property to Fannie

4   Mae; where the Property was sold for $225,000.00 which satisfied the debt fully in 2017, the

5   judgment sought by BANA in 2018 is more than $500,000.00.

6       40.     BANA engaged in deception when it filed the original complaint in state court in

7   2014 seeking but failed to disclose to the court that a nonjudicial foreclosure was going to be

8   commenced or had already been in process. BANA has continued to engage in deception by

9   amending its complaint to include mortgage interests, escrow advances and other fees and costs

10  which accrued well after title of the Property has been vested in Fannie Mae.  BANA engages in

11  deception in representing to the state court that its judicial foreclosure would actually provide

12  Plaintiff with "additional statutory time to make his payments current under the Loan" when it

13  knows or should have known that the Property was sold to Fannie Mae and that Plaintiff was no

14  longer obligated to make any further payments on the Loan.

15      41.     Upon information and belief, BANA's specific practices of conducting judicial

16  foreclosure and nonjudicial foreclosure simultaneously, or conducting serial foreclosures, have

17  victimized not just the Plaintiff but others who are similarly situated.  BANA's actions have also

18  impacted the public by introducing instability into the title of real property.  Moreover, Plaintiff

19  asserts that actions taken with respect to foreclosures necessarily impact the public interest due to

20  the interconnected nature of real property with many aspects of public concern (such as taxation,

21  title, neighborhoods composed of empty houses, etc.).

22      42.     Plaintiff has suffered injury and damages as a direct result of BANA's unfair and

23  deceptive conduct; both the judicial foreclosure suit of 2014 and the trustee's sale of 2017 will

FIRST AMENDED COMPLAINT - 13

have a devastating effect on Plaintiff's creditworthiness for many years.  This includes his ability to borrow money, to rent a place to live, to seek employment and to be considered for other benefits.  Plaintiff has been forced to spend time and money to hire counsel to defend against the current judicial foreclosure in state court.  Plaintiff was also prematurely dispossessed of his property by way of BANA's wrongful actions.  Additionally, Plaintiff incurred expenses in seeking counsel to determine his legal rights and responsibilities.

### COUNT FIVE: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

43.    BANA serviced the Loan when the Loan was in default and took collection actions against the Plaintiff based on such default.  BANA serviced the defaulted Loan exclusively at all times relevant to this lawsuit.  Upon information and belief, BANA acts as such a servicer of defaulted loans on a regular basis.  In addition, upon information and belief, BANA obtained/began servicing the Loan after it was in default.  As such, BANA is a debt collector under the FDCPA, 15 U.S.C § 1692a(6).

44.    As stated above, BANA's FAC does give lip service to purportedly waiving any deficiency judgment, but this is vastly overshadowed by (a) seeking a deficiency judgment against Mr. Ward personally on that very same page, (b) suing Mr. Ward over his "indebtedness" as stated on page one of the FAC, (c) failing to limit its FAC to an in rem proceeding, (d) BANA emblazoning the fact that it is a "debt collector" over all of its correspondence (and the FAC) and explaining that Mr. Ward had debt validation rights pursuant to 15 U.S.C. § 1692g, the provision of which only makes sense if BANA was seeking to collect a debt from Mr. Ward.  As such, BANA's actions make clear that it was collecting, or attempting to collect, a "debt" within the scope of the FDCPA.

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

45. In addition to the foregoing, as well as in the alternative, BANA constitutes a "debt collector" under 15 U.S.C. § 1692a(6) for purposes of 15 U.S.C. § 1692f(6). *See Dowers v. Nationstar Mortgage, LLC*, 852 F.3d 964 (9th Cir. 2017). BANA's action of commencing and concluding a nonjudicial foreclosure proceeding while its judicial foreclosure action was pending and not yet concluded or suspended in Jefferson County Superior Court, violated 15 U.S.C. § 1692f(6)(A) and/or (C).

Further, the discovery rule applies in FDCPA cases. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 941 (9th Cir. 2009). Due to BANA's actions, Plaintiff did not learn of some of BANA's wrongful conduct until a later time. For example, as BANA claims to have sold the property, its request to set aside its own sale (while simultaneously not naming the buyer as a party) is either futile, lacks standing, or communicates that BANA may never have actually sold the property. If that is the case, then it would have only recently become apparent that the nonjudicial foreclosure was wrongful on these or other bases as well. In any event, BANA's actions related to its wrongful nonjudicial foreclosure violate 15 U.S.C. § 1692f(6).

46. In addition to the foregoing, as well as in the alternative, BANA violated 15 U.S.C. §§ 1692e(5) and 1692f, including subsections thereof, by communicating with the Plaintiff and recording information about the nonjudicial foreclosure in 2017 when it was prohibited by law from simultaneously pursuing both nonjudical and judicial means to foreclosure on the collateral and collect on the underlying mortgage debt obligation under Washington law, to wit; RCW 61.24.030(4). *See Rosenau v. Unifund Corp*., 539 F.3d 218 (3rd Cir. 2008).

47. In addition to the foregoing, as well as in the alternative, BANA violated 15 U.S.C. § 1692(e)(2) and (8), by communicating false, deceptive or misleading credit information about Plaintiff on an ongoing basis to the credit reporting agencies which it knew or should have known

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

to be false because of the multiplicity of its foreclosure action against the Plaintiff. Upon information and belief, BANA has communicated credit information based on the 2014 judicial foreclosure, the 2017 nonjudicial foreclosure, and its effort to revive the judicial foreclosure in 2018 and beyond.  The communication of such credit reporting information was done in connection with BANA's attempts to collect a debt and/or foreclose on the property.

48.    Plaintiff has suffered damages as a result of BANA's successive and continuing attempts to foreclose on his homestead when BANA knew or should have known that the trustee's sale was not legally authorized.  Plaintiff's damages include lost time from his business, out-of-pocket expenses, attorney's fees and costs incurred to resist BANA's current and successive judicial foreclosure in Jefferson County Superior Court.

49.    Plaintiff demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a.    For an award of damages, and other remedies, including attorney fees and costs provided under the Fair Debt Collection Practices Act.

b.    Judgment against Defendants for reasonable attorney fees and costs pursuant to RCW 4.84.330 and the terms of the Deed of Trust.

c.    For an award of based on injury and actual damages suffered by Plaintiff, and treble damages and attorney fees and costs under the Washington Consumer Protection Act;

d.    For an award of damages based on the torts of Negligence and Negligent Misreprsentation, including emotional distress;

e.    For an award of damages based on the tort of Abuse of Process, including emotional distress and reasonable attorney's fees and costs;

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE, WA 98104
(206) 395-2665/F (206) 395-2719

1    f.    For prejudgment interests;

2    g.    For other additional relief the Court deems just and equitable.

3    DATED this 3rd day of June, 2019

4                                              **ANDERSON SANTIAGO, PLLC**

5                                              By: _/s/ Jason D. Anderson_
                                               Jason D. Anderson, WSBA No. 38014
6                                              T. Tyler Santiago, WSBA No. 46004
                                               Attorney for Plaintiff
7                                              787 Maynard Ave. S.
                                               Seattle, WA 98104
8                                              (206) 395-2665
                                               (206) 395-2719 (fax)
9

10                                             **HA THU DAO, Attorney at Law**

11                                             By:  _/s/ Ha Thu Dao_
                                               Ha Thu Dao, WSBA No. 21793
12                                             Attorneys for Defendant James Ward
                                               c/o Barraza Law, PLLC
13                                             14245F Ambaum Blvd SW
                                               Seattle, WA 98166-1421
14                                             (727) 269-9334
                                               (206) 933-7863 (fax)

15

16

17

18

19

20

21

22

23

1

### Certificate of Service

2       I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the

3   Court using the CM/ECF system which will send notification of such filing to the following:

4

5   Charles T. Meyer
   Severson & Werson

6   19100 Von Karman Avenue Suite 700
   Irvine, CA 92612

7   *Attorneys for Defendant*

8

9                       /s/ Jason D. Anderson

10                     Jason D. Anderson

11

12

13

14

15

16

17

18

19

20

21

22

23

CERTIFICATE OF SERVICE - 1
2:17-CV-01897-RSM

**ANDERSON | SANTIAGO**
787 MAYNARD AVE S
SEATTLE WA 98104
(206) 395-2665 / F (206) 395-2719